## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| MARIA GOMEZ CALDERON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: CV 2025 - _____ |
| | ) | |
| CITY OF MONTGOMERY; | ) | JURY TRIAL DEMANDED |
| OFFICER MARKELLE COX | ) | |
|    in his individual capacity; | ) | |
| OFFICER TYWON MARTIN | ) | |
|    in his individual capacity; | ) | |
| SGT. EBONY DAILEY, | ) | |
|    in her individual capacity; and | ) | |
| DOE SUPERVISOR #1 | ) | |
| (Sergeant/Shift Supervisor) | ) | |
|    individual capacity; and | ) | |
|  DOE SUPERVISOR #2 | ) | |
| (Lieutenant/Watch Commander) | ) | |
|    individual capacity; and | ) | |
| DOE SUPERVISOR #3 | ) | |
| (Lead Criminal Investigator) | ) | |
|    individual capacity; and | ) | |
| DOE SUPERVISOR #4 | ) | |
| (Internal Affairs Supervisor) | ) | |
|    individual capacity | ) | |
|    Defendants. | | |

## **COMPLAINT**

## I. INTRODUCTION

1.  This action under 42 U.S.C. § 1983 and Alabama law arises from a custodial sexual assault
    and coercion committed under color of law by an on-duty Montgomery Police Department
    ("MPD") officer, followed by official intimidation and a municipal pattern of investigative

interference and charge-minimization that prioritized institutional self-protection over enforcement of the law and the safety of a victim.

2. The misconduct unfolded across three discrete episodes beginning on October 20, 2023, at approximately 10:30 p.m. and continuing past midnight into October 21, 2023:

   a. in a Montgomery Walmart parking lot, where Plaintiff—handcuffed in the rear of an MPD patrol car—was subjected to sexual touching and assault by OFFICER MARKELLE COX (Officer Cox) while OFFICER TYWON MARTIN (Officer Martin) was present and/or nearby at all times;

   b. at a second, darker lot, where Plaintiff—still handcuffed—was relocated and subjected to renewed sexual touching and assault along with quid-pro-quo "sex-for-release" coercion by Officer Cox while Officer Martin remained present and/or nearby. As this second episode was happening, a third officer, SGT. EBONY DAILEY (Sgt. Dailey), arrived, parked alongside, conversed with them, observed the custodial scene, and failed to intervene; and

   c. upon return to the Walmart lot, Officer Cox, with Officer Martin present and/or nearby, threatened Plaintiff and used her phone to initiate further intimidation, followed by threatening texts and/or calls.

3. Thereafter, MPD and the City retained control of the criminal investigation, failed to refer the matter for independent review, shaped the presentation of evidence to a state grand jury, and excluded Plaintiff from testifying— yielding a narrowed state charge that omitted the custodial, color-of-law dimensions of the offense (see Ex. D). Subsequent federal

charges reflected the constitutional character of the conduct and the post-incident intimidation (see Ex. E)[1].

4. Plaintiff seeks redress for violations of the Fourth and Fourteenth Amendments and related state-law torts. She seeks compensatory damages against all liable parties, punitive damages against the individual defendants, reasonable attorney's fees and costs under 42 U.S.C. § 1988, pre- and post-judgment interest, and narrowly tailored declaratory and injunctive relief against the City to remedy the policies, customs, training, supervision, and investigative practices that enabled the violations and their concealment.

## II. JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4) because Plaintiff brings claims arising under the Constitution and laws of the United States, including 42 U.S.C. § 1983. The Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy.

6. Personal jurisdiction and venue are proper in this District and Division under 28 U.S.C. § 1391(b) because all Defendants reside in Alabama and a substantial part of the events or omissions giving rise to these claims occurred in Montgomery County, Alabama, which lies within the Middle District of Alabama, Northern Division. This Court also has personal

---

[1] **Limited purpose of exhibits.** Exhibits D–E are attached solely to establish the existence, dates, captions, case numbers, and scope of the parallel criminal proceedings and Defendants' notice—**not** for the truth of any allegations. See Fed. R. Evid. 201(b)(2), 803(8). Plaintiff does not concede that either indictment establishes probable cause or has preclusive effect.

jurisdiction over the individual Defendants because they reside in Alabama and the conduct at issue occurred in Alabama.

    a.  Service on the City of Montgomery will be effected under Fed. R. Civ. P. 4(j)(2)(A)–(B) and Ala. R. Civ. P. 4(c)(8) by delivering or mailing the summons and complaint to the Mayor or the City Clerk at 103 North Perry Street, Montgomery, Alabama 36104.

    b.  Service on the individual Defendants, (Officer Markelle Cox, Officer Tywon Martin, and Sgt. Ebony Dailey), will be effected under Fed. R. Civ. P. 4(e)(1)–(2), including by personal delivery, by leaving copies at each individual's dwelling or usual place of abode with a person of suitable age and discretion residing therein, or by delivery to an authorized agent; or as otherwise permitted by Alabama law.

    c.  Service on the Doe Defendants will be effected promptly upon identification and substitution. Plaintiff will seek relation back under Fed. R. Civ. P. 15(c)(1)(A) (and Ala. R. Civ. P. 9(h), 15(c)(4)) and will serve the substituted defendants pursuant to Fed. R. Civ. P. 4, subject to any extension the Court orders under Rule 4(m).

## III. PARTIES

7.  Plaintiff MARIA GOMEZ CALDERON ("Plaintiff" or "Ms. Gomez") is an adult resident of Montgomery County, Alabama. She is a Spanish-speaking, limited-English-proficient individual.

8.  Defendant CITY OF MONTGOMERY ("City") is an Alabama municipal corporation and a "person" under 42 U.S.C. § 1983. The City is responsible for the policies, customs,

training, supervision, investigations, and discipline of the Montgomery Police Department ("MPD") and its sworn officers. The City may be served through the Mayor or City Clerk at 103 North Perry Street, Montgomery, Alabama 36104.

9. Defendant MARKELLE JAQUANN COX ("Officer Cox") was, at all relevant times, a sworn MPD officer acting under color of state law. He is sued in his individual capacity for violations of the U.S. Constitution and laws of the United States and related state-law torts.

10. Defendant, OFFICER TYWON MARTIN ("Officer Martin") was, at all relevant times, a sworn MPD officer who participated in, facilitated, and/or witnessed Plaintiff's detention, transport, relocation, and the misconduct alleged herein. He was present in or near the patrol vehicle during each of the three episodes described below and failed to intervene. He is sued in his individual capacity.

11. Defendant, SGT. EBONY DAILEY ("Sgt. Dailey") was, at all relevant times, a sworn MPD officer who arrived alongside the patrol unit during the second location, conversed with the officers while Plaintiff remained handcuffed in the rear compartment, observed the custodial scene, and failed to intervene. She is sued in her individual capacity.

12. DOE SUPERVISOR 1 (Patrol Sergeant / Shift Supervisor) is the on-duty patrol sergeant (shift supervisor) who exercised supervisory authority over Unit #5221 from 21:00 on October 20, 2023 to 02:00 on October 21, 2023, covering events at Walmart #930 (3801 Eastern Blvd., Montgomery) and the secondary lot. Sued in an individual capacity; the true name will be substituted by amendment.

13. DOE SUPERVISOR 2 (Lieutenant / Watch Commander) is the on-duty lieutenant/watch commander with command-level authority over the units including Unit #5221 during

21:00–02:00, Oct. 20–21, 2023, covering Walmart #930 and the secondary lot. Sued in an individual capacity; the true name will be substituted by amendment.

14. DOE SUPERVISOR 3 (Lead Criminal Investigator) is the criminal investigator assigned on and after October 21, 2023, who took control of the criminal case arising from the Oct. 20–21, 2023 events at Walmart #930 and the secondary lot. Sued in an individual capacity; the true name will be substituted by amendment.

15. DOE SUPERVISOR 4 (Internal Affairs Supervisor) is the Internal Affairs sergeant or lieutenant who opened and/or controlled the administrative/IA case arising from the Oct. 20–21, 2023 events at Walmart #930 and the secondary lot. Sued in an individual capacity; the true name will be substituted by amendment.

16. At all times relevant, each individual defendant acted under color of state law. For Plaintiff's state-law claims, the negligent, careless, or unskillful acts and omissions alleged herein were undertaken within the line and scope of municipal employment, triggering the City's duties of defense and indemnity to the fullest extent permitted by Alabama law, including Ala. Code § 11-47-190.

   a. Fictitious parties; governing law: Plaintiff sues by fictitious names only the supervisory and investigative Doe defendants identified in paragraphs 12–15 (Patrol Sergeant/Shift Supervisor; Lieutenant/Watch Commander; Lead Criminal Investigator; Internal Affairs Supervisor), each sued in an individual capacity, pursuant to Ala. R. Civ. P. 9(h) and 15(c)(4) and Fed. R. Civ. P. 15(c)(1)(A). The on-scene driver has been identified as Officer Tywon Martin and the arriving Sgt. Ebony Dailey; both are named above and are not pled fictitiously.

b.  Particularized identification: Each remaining Doe defendant is pled with particularity by role/authority (on-duty sergeant; watch commander; lead criminal investigator; IA supervisor), the unit and personnel overseen (including Unit #5221), the precise date/time window (approximately 21:00, Oct. 20, 2023, to 02:00, Oct. 21, 2023), and the locations at issue (Walmart #930, 3801 Eastern Blvd.; the secondary/darker lot; and the return to Walmart), together with responsibilities for transport safeguards, BWC/ICV activation/auditing, CAD/AVL monitoring, interpreter access, and evidence control.

c.  Ignorance despite due diligence (pre-suit): Despite diligent efforts, Plaintiff did not know the true names of the supervisory/investigative Does at filing. Pre-suit diligence included sworn municipal claim and identity demands and public-records requests for duty rosters/lineups, watch-commander and sergeant logs, CAD run cards and AVL/GPS, radio/911 audio, BWC/ICV with metadata, Walmart CCTV chain of custody, IA/CI intake sheets, and BWC audit reports. Those efforts yielded the identities of Officer Martin and Sgt. Dailey; the City has not disclosed the identities of the supervisory/investigative personnel. See Exhibits A–C.

d.  Continued diligence (post-filing): Promptly after filing, Plaintiff is serving narrowly tailored, identity-focused discovery (interrogatories, requests for production/admission, and a Rule 30(b)(6) notice) and, as needed, will seek leave under Fed. R. Civ. P. 26(d)(1) to take identity-only discovery, together with a reasonable extension under Fed. R. Civ. P. 4(m) to effect service upon disclosure.

e.  Relation back and service: Upon disclosure, Plaintiff will promptly amend to substitute the true names of the Doe defendants; such amendments will relate back

under Fed. R. Civ. P. 15(c)(1)(A) and Ala. R. Civ. P. 9(h) and 15(c)(4) because the claims arise from the same conduct, transaction, or occurrence alleged in this original complaint. The substituted defendants will be served pursuant to Fed. R. Civ. P. 4, subject to any Court-ordered extension under Rule 4(m).

## IV. FACTUAL ALLEGATIONS

17. On the evening of October 20, 2023, at approximately 11:00 p.m., Plaintiff was detained by two MPD patrol officers—Officer Cox and Officer Martin—in the parking lot of the Walmart in Montgomery, Alabama. Plaintiff is a limited-English-proficient Spanish speaker and was handcuffed and placed in the rear compartment of the patrol vehicle.

18. While Plaintiff was restrained in the Walmart lot, Officer Cox, acting under color of law, intentionally subjected Plaintiff to unwanted sexual touching and initiated coercive propositions, exploiting her custodial status and language barrier. The driver, Officer Martin, remained present and/or near the patrol vehicle and failed to intervene.

19. Defendants Officer Cox and Officer Martin transported Plaintiff, while still handcuffed, away from the Walmart lot to a second, darker parking area. During this relocation and while at the second location, Officer Cox renewed sexual touching and made quid-pro-quo threats—conditioning Plaintiff's "release" or avoidance of jail on submission to sexual acts.

20. At the second location, a third MPD officer—Defendant Sgt. Dailey—arrived and parked beside the patrol unit, conversed with Officer Cox and Officer Martin while Plaintiff remained handcuffed in the rear, and then departed without intervening or securing Plaintiff's safety.

21. Following the encounter at the second location, Officer Cox and Officer Martin transported Plaintiff back to the Walmart lot. There, Officer Cox threatened adverse consequences if Plaintiff reported the misconduct, used or caused the use of Plaintiff's phone to obtain her contact information, and sent or caused to be sent follow-up messages and calls that conveyed intimidation and control after the incident.

22. The three episodes—Walmart lot; darker lot; return to Walmart—were separate seizures and custodial events, each involving distinct misconduct and resulting harms. Throughout, Officer Cox and Officer Martin acted in concert, and Sgt. Dailey observed and failed to intervene despite Plaintiff's obvious custodial vulnerability.

23. MPD policy and common professional standards require, among other things: (a) accurate CAD entries and AVL tracking of stops, transports, and mileage; (b) activation and retention of body-worn camera (BWC) and in-car video (ICV); (c) same-gender or safeguarded opposite-sex transport protocols; (d) supervisor notification and oversight of custodial transports and deviations; and (e) language-access measures for LEP detainees, including timely interpreter access. Defendants failed to comply with these requirements. Plaintiff's written preservation letters to MPD, the District Attorney, and the Sheriff detailed these requirements. See Exhibit B.

24. After Plaintiff reported the incident within hours, MPD and the City retained control of the investigation, did not refer the matter to an independent agency for criminal investigation, and controlled the evidence compilation and presentation to the Montgomery County District Attorney.

25. On information and belief, during the state grand-jury process, City and/or MPD personnel presented a narrowed account that omitted or minimized custodial, coercive, and color-of-

law features of the misconduct; Plaintiff was not permitted to testify despite her availability and request, and a lesser state charge was issued. On April 15, 2024, a Montgomery County grand jury returned an indictment in State of Alabama v. Markelle Jaquann Cox, Case No. CC-2024-000373.00 (Montgomery Cty. Cir. Ct.), charging Sexual Abuse in the First Degree, Ala. Code § 13A-6-66, based on the Oct. 20–21, 2023 custodial events involving Plaintiff; the indictment is unsealed and docket-stamped on the public record. See Exhibit D (State Indictment) (filed Apr. 15, 2024) (Grand Jury No. 04/15/2024-199). Plaintiff cites Exhibit D solely to establish the existence, filing date, caption, case number, and scope of the criminal proceeding—not for the truth of any allegations.

26. Subsequent federal charges reflected the constitutional character of the misconduct and post-incident intimidation, including color-of-law sexual abuse and obstruction-related counts, further confirming the custodial, coercive nature of the events described above. On February 12, 2025, a federal grand jury returned an indictment in United States v. Markelle Jaquann Cox, Case No. 2:25-cr-00099-RAH-SMD (M.D. Ala.), charging, inter alia, Deprivation of Rights Under Color of Law (18 U.S.C. § 242) based on abusive sexual contact while Plaintiff was in custody (Counts 1–3) and Obstruction (18 U.S.C. § 1512(b)(3)) predicated on misleading statements to MPD investigators concerning the sexual contact, sex proposition, and text messages (Counts 4–6). The indictment is unsealed and docket-stamped on the public record. See Exhibit E (Federal Indictment) (filed Feb. 12, 2025). Plaintiff cites Exhibits D and E solely to establish the existence, filing dates, captions, case numbers, and scope of the parallel criminal proceedings—not for the truth of any allegations.

27. Evidence Preservation and Rule 37(e). Plaintiff provided prompt preservation notice; Defendants have possession, custody, or control over BWC/ICV video and metadata, CAD/AVL data, radio/dispatch audio, MDT messages, IA/CI files, and third-party CCTV obtained by or available to MPD. To the extent any relevant ESI—including items referenced in obstruction counts premised on misleading statements about the sexual contact, sex proposition, and text messages (see Ex. E; see also Ex. D)—was lost because Defendants failed to take reasonable steps to preserve it, and it cannot be restored or replaced, Plaintiff seeks relief under Fed. R. Civ. P. 37(e) appropriate to the prejudice shown, up to and including adverse-inference instructions and evidentiary sanctions. Plaintiff provided prompt preservation notice as shown in Exhibit B.

28. Judicial Notice of Criminal Proceedings. Pursuant to Fed. R. Evid. 201(b)(2), Plaintiff respectfully requests judicial notice of (a) State of Alabama v. Markelle Jaquann Cox, No. CC-2024-000373.00 (Montgomery Cty. Cir. Ct.)—indictment returned Apr. 15, 2024 (unsealed and docket-stamped)—and (b) United States v. Markelle Jaquann Cox, No. 2:25-cr-00099-RAH-SMD (M.D. Ala.)—indictment filed Feb. 12, 2025 (unsealed and docket-stamped). Plaintiff offers Exhibit D (state indictment) and Exhibit E (federal indictment) solely to establish the existence, captions, case numbers, filing dates, and scope of the parallel criminal proceedings—not for the truth of any allegations. Plaintiff will file certified copies admissible under Fed. R. Evid. 902(4)[2].

---

[2] Plaintiff reserves the right to seek admission of certified copies at later stages. The indictments are referenced for their existence, captions, numbers, and filing dates only, not for the truth of any allegations, and nothing herein concedes probable cause or preclusion.

29. On information and belief, MPD supervisors and command personnel were on duty during the incident and its aftermath, had access to CAD/AVL/BWC data reflecting the patrol unit's movements and video activation status, and failed to intervene, correct, or discipline in a manner reasonably calculated to protect Plaintiff or preserve evidence.

30. The City's policies, customs, failures to supervise and discipline, ratification of obvious violations, and investigative interference were a moving force behind the constitutional injuries suffered by Plaintiff, including unreasonable seizure, excessive and unreasonable force in the form of coerced sexual contact, and denial of equal protection and substantive due process.

31. As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered physical pain, emotional distress, fear, humiliation, anxiety, post-traumatic stress symptoms, loss of enjoyment of life, out-of-pocket medical and counseling expenses, lost time and income, and other damages to be proven at trial.

32. Defendants Officer Cox, Officer Martin, and Sgt. Dailey acted willfully, maliciously, in bad faith, and with reckless disregard for Plaintiff's federally protected rights. Supervisory and investigative Defendants acted with deliberate indifference to known or obvious risks that such misconduct would occur and persist without accountability.

33. All individual Defendants acted under color of state law. For Plaintiff's state-law claims, their negligent, careless, and unskillful acts and omissions occurred within the line and scope of municipal employment.

34. The seizures, transports, relocations, and custody at issue arose out of the use of MPD patrol vehicle(s)—including detention in the rear compartment while handcuffed, route/mileage deviations, and failures in CAD/AVL logging and BWC/ICV activation—

creating an additional nexus to law-enforcement liability, commercial auto, and umbrella/excess coverage, in addition to municipal indemnity under Ala. Code § 11-47-190.

35. Pre-Suit Notice, Identity Demand, and Relation-Back (Alabama Municipal Prerequisites):

    a. Municipal Claim Notice (Ala. Code § 11-47-23): Within six (6) months of the incident, Plaintiff served a written, sworn notice of claim on the City of Montgomery identifying the time, place, and manner of her injuries. See Exhibit A (Notice of Claim and certified-mail receipts). Plaintiff has therefore satisfied the condition precedent to asserting state-law claims against the City.

    b. Identity Demand and Safe Harbor (Ala. Code § 11-47-191(c)): Before filing, Plaintiff demanded from the Mayor/City Clerk the names of any other persons jointly liable with the City for her injuries; the City failed to furnish those names within ten (10) days. Under § 11-47-191(c), Plaintiff is not required to join such person(s) at filing, and this action may proceed against the City notwithstanding the present use of Doe placeholders. See Exhibit A (identity-demand language) and Exhibit C (City Attorney's Feb. 14, 2024 response).

    c. Fictitious Parties and Relation Back: Consistent with Fed. R. Civ. P. 15(c)(1)(A) with the application of Ala. R. Civ. P. 15(c)(4) and 9(h). Plaintiff will promptly substitute true names for the DOE defendants upon disclosure; those amendments will relate back to this filing. See Fed. R. Civ. P. 15(c)(1)(A).

## V. CAUSES OF ACTION

### COUNT I

**42 U.S.C. § 1983: Fourth Amendment — Unreasonable Seizure & Excessive Force**

(Custodial Sexual Assault)
(Against Defendants Officer Cox, Officer Tywon Martin, and Sgt. Ebony Dailey, in their individual capacities)

36. Plaintiff realleges paragraphs 1–34.

37. At all times relevant, on October 20, 2023, beginning at approximately 10:30 p.m. and continuing past midnight into October 21, 2023, Plaintiff was "seized" within the meaning of the Fourth Amendment—from the initial detention at Walmart, through transport and relocation to the darker lot, and then back to Walmart.

38. Acting under color of state law, Defendant Officer Cox used objectively unreasonable force by committing custodial sexual assault— including quid-pro-quo 'sex-for-release' coercion—while Plaintiff was handcuffed in the rear of a patrol vehicle. Sexual assault by an officer against a detainee constitutes an application of force that is per se objectively unreasonable under the Fourth Amendment.

39. Defendant, Officer Martin  was present during each custodial episode, observed and/or had reason to know of Officer Cox's unconstitutional conduct, had a realistic opportunity to intervene to prevent or curtail it, and failed to do so. His failure to intervene violated the Fourth Amendment and independently caused harm.

40. Defendant, Sgt. Dailey , arrived alongside the patrol unit during the second episode, darker lot, while Plaintiff remained handcuffed, observed and/or had reason to know of ongoing constitutional violations, had a realistic opportunity to intervene, and failed to do so. Her failure to intervene violated the Fourth Amendment and independently caused harm.

41. The foregoing acts and omissions were a direct and proximate cause of Plaintiff's physical pain, humiliation, emotional distress, and other damages.

42. The rights at issue—including the right to be free from custodial sexual assault by an officer and the right to officers' intervention to stop such misconduct—were clearly established at the time. Defendants' conduct was willful, malicious, or in reckless and callous disregard of Plaintiff's federally protected rights.

## **COUNT II**

**42 U.S.C. § 1983: Fourteenth Amendment — Substantive Due Process**

(Bodily Integrity)
(Against Defendants Officer Cox, Officer Tywon Martin, and Sgt. Ebony Dailey, in their individual capacities)

43. Plaintiff realleges paragraphs 1–34.

44. In the alternative to the Fourth Amendment claim to the extent any episode is deemed outside the continuing seizure, Defendants violated Plaintiff's substantive due-process right to bodily integrity by engaging in, facilitating, or failing to stop coerced sexual touching and quid-pro-quo demands for sexual acts while Plaintiff was in custody; such conduct shocks the conscience. This Count is pled in the alternative to Count I to the extent any episode is deemed outside the scope of a continuous seizure.

45. Officer Cox's custodial sexual assault and coercion were arbitrary, egregious abuses of governmental power that violated substantive due process.

46. Defendant Officer Martin (Driver) had actual knowledge of Plaintiff's custodial vulnerability and Officer Cox's misconduct, had a realistic opportunity to intervene to

prevent or curtail it, and deliberately failed to do so, thereby violating substantive due process.

47. Defendant Sgt. Dailey arrived while Plaintiff remained handcuffed, had actual or constructive knowledge of ongoing misconduct, had a realistic opportunity to intervene, and deliberately failed to do so, thereby violating substantive due process.

48. The rights to bodily integrity free from custodial sexual assault and to officers' intervention to stop such misconduct were clearly established at the time. Defendants acted willfully, maliciously, or with reckless and callous disregard of Plaintiff's federally protected rights.

49. Defendants' conduct was a direct and proximate cause of Plaintiff's physical pain, humiliation, emotional distress, and other damages. The rights violated were clearly established at the time.

## COUNT III

### 42 U.S.C. § 1983: Equal Protection

Sex-Based Misconduct Under Color of Law
(Against Defendants Officer Cox, Officer Tywon Martin, and Sgt. Ebony Dailey, in their individual capacities)

50. Plaintiff realleges paragraphs 1–34.

51. Defendant Officer Cox intentionally targeted and coerced Plaintiff for sex while she was in police custody because of her sex, subjecting her to sex-based harassment, coercion, and differential treatment under color of law, thereby denying her equal protection of the laws.

   a. Defendants' conduct constituted intentional disparate treatment based on sex, satisfying the discriminatory-purpose requirement. Defendants' conduct was

motivated, at least in part, by Plaintiff's sex and resulted in the denial of equal protection.

52. Officer Martin was present for and aware of Officer Cox's sex-based misconduct, had a realistic opportunity to intervene, and intentionally or with deliberate indifference failed to do so, thereby violating the Equal Protection Clause.

53. Sgt. Dailey arrived while Plaintiff remained handcuffed, perceived and/or reasonably should have perceived ongoing sex-based misconduct, had a realistic opportunity to intervene, and intentionally or with deliberate indifference failed to do so, thereby violating the Equal Protection Clause.

54. At all relevant times, it was clearly established that custodial sexual assault and sex-based disparate treatment by law-enforcement officers, and the failure of fellow officers to intervene to stop such conduct, violate the Equal Protection Clause.

55. Defendants' conduct was a direct and proximate cause of Plaintiff's physical pain, humiliation, emotional distress, and other damages. The rights violated were clearly established at the time.

## <u>COUNT IV</u>

### 42 U.S.C. § 1983: Failure to Intervene

(Against Defendants Officer Tywon Martin and Sgt. Ebony Dailey, in their individual capacities)

56. Plaintiff realleges paragraphs 1–34.

57. While Plaintiff was handcuffed and in custody, Officer Martin and Sgt. Dailey were present, observed or reasonably should have observed Officer Cox's ongoing constitutional violations, and had a realistic opportunity and means to prevent or mitigate them—

including by issuing verbal commands, radioing for a supervisor, activating BWC/ICV, or removing Plaintiff from Officer Cox's control. They had sufficient time and means to intervene and a realistic opportunity to prevent or mitigate the harm.

58. Despite this realistic opportunity, each failed to intervene, acting intentionally or with deliberate indifference to Plaintiff's clearly established rights.

59. Their failures to intervene were a direct and proximate cause of Plaintiff's physical pain, humiliation, emotional distress, and other damages. The rights violated were clearly established at the time.

### COUNT V

**42 U.S.C. § 1983: Supervisory Liability — Deliberate Indifference**
(Against DOE SUPERVISORS 1–4, in their individual capacities)

60. Plaintiff realleges paragraphs 1–34.

61. Defendants DOE SUPERVISORS 1–4 were responsible, respectively, for field and command oversight, investigative follow-up, and internal-affairs review relating to the October 20–21, 2023 custodial events. The post-incident obstruction-related conduct alleged in Exhibit E further underscored the need for supervisory intervention and preservation controls. Their duties included enforcing opposite-sex-transport safeguards; ensuring activation and auditing of body-worn and in-car video (BWC/ICV) systems; monitoring CAD/AVL location and mileage data; guaranteeing interpreter access for limited-English-proficient detainees; and preserving evidence and reports generated from those activities.

62. Through duty-roster authority, CAD/AVL and radio monitoring, BWC/ICV compliance alerts, post-shift reports, and prior complaints or audit findings, these supervisory

Defendants had actual or constructive knowledge of a substantial risk that Officers Cox and Officer Martin were transporting a lone LEP female detainee, deviating from approved routes, and operating outside required safeguards. Despite that knowledge,

a. the Sergeant (DOE SUPERVISOR #1) failed to direct immediate compliance, dispatch oversight, or require same-gender assistance;

b. the Lieutenant/Watch Commander (DOE SUPERVISOR #2) failed to intervene or order location verification and BWC activation;

c. the Detective (DOE SUPERVISOR #3), once assigned to investigate, failed to secure and preserve critical evidence and to initiate an independent criminal referral; and

d. the Internal Affairs Supervisor (DOE SUPERVISOR #4) failed to open or maintain an adequate IA file, safeguard recordings and metadata, or ensure a conflict-free investigation.

e. A causal connection exists between each supervisory Defendant's actions and the constitutional violations in that they had notice of widespread and obvious risks of custodial sexual misconduct and evidence suppression yet failed to take corrective action; maintained customs and practices amounting to deliberate indifference; and, despite knowledge of specific violations, failed to intervene, discipline, or retrain, thereby directly causing the deprivations alleged.

63. Each supervisory Defendant's omissions, individually and collectively, reflected deliberate indifference to obvious and recurring risks of custodial sexual abuse, intimidation, and evidence suppression. Their failures to supervise, train, and enforce mandatory safeguards were a moving force behind the violations of Plaintiff's clearly established Fourth and

Fourteenth Amendment rights and directly and proximately caused her injuries and damages.

## COUNT VI

**42 U.S.C. § 1983: Municipal Liability (Monell)** — Policies, Customs, Failure to Train/Supervise/Discipline/Investigate; Ratification; Investigative Interference

(Against Defendant CITY OF MONTGOMERY)

64. Plaintiff realleges paragraphs 1–34.

65. At all relevant times, the City of Montgomery—through final policymakers for the Montgomery Police Department ("MPD"), including the Chief of Police and command staff—maintained and enforced policies, customs, and practices that were the moving force behind the violations of Plaintiff's constitutional rights. These included: (a) deficient opposite-sex transport safeguards (absence of mandatory supervisor notification, route/mileage logging, continuous rear-compartment BWC/ICV recording, and CAD/AVL monitoring during custodial transport); (b) inadequate BWC/ICV activation, auditing, and enforcement; (c) failure to ensure timely interpreter access and language-access procedures for limited-English-proficient detainees; (d) inadequate CAD/AVL oversight and documentation during stops, relocations, and transports; and (e) deficient training, supervision, and discipline regarding custodial sexual misconduct, coercion, and officers' duty to intervene. These customs and omissions were so deficient that policymakers can reasonably be said to have been deliberately indifferent to the known risk of custodial sexual assault.

66. The City was on notice—through prior incidents, complaints, audits, and the obvious risks inherent in opposite-sex custodial transport of a lone LEP detainee—that these deficiencies

created a foreseeable and highly predictable risk of custodial sexual assault, coercion, and intimidation. Despite such notice, the City made a deliberate choice not to implement or enforce adequate training, supervision, or safeguards.

    a. (see Exhibit C reflecting acknowledgment/denial of liability despite arrest/termination, Exhibit D reflecting a narrowed state charging presentation, and Exhibit E alleging color-of-law abusive sexual contact and obstruction).

67. Following Plaintiff's report, the City—acting through MPD command, Criminal Investigations, Internal Affairs, and related personnel—retained unilateral control of the criminal investigation, declined referral for independent review, failed to preserve and/or timely produce critical BWC/ICV, CAD/AVL, dispatch, and related records, narrowed the materials and characterizations furnished to prosecutors and/or a grand jury, curtailed Plaintiff's participation, and declined meaningful corrective or disciplinary action. This conduct ratified the unconstitutional acts, communicated tolerance for similar misconduct, and foreseeably aggravated Plaintiff's injuries.

    a. The City's post-incident retention of control and evidence-shaping constitute municipal ratification and "whitewash" of unconstitutional conduct. (see Exhibit C reflecting City's acknowledgment and denial of liability despite arrest/termination).

68. Independently and in the alternative, the City's training and supervision were so obviously inadequate—given the known, recurring circumstances of opposite-sex custodial transport, LEP vulnerabilities, and reliance on BWC/ICV/CAD/AVL controls—that the need for additional or different training and enforcement was plainly apparent, and the failure to provide it constitutes deliberate indifference.

69. The foregoing municipal policies, customs, failures to train, supervise, investigate, and discipline, together with the City's ratification and investigative interference, were the moving force and proximate cause of the violations of Plaintiff's rights under the Fourth and Fourteenth Amendments and of her resulting damages. These policies and customs were the moving force behind Plaintiff's injuries.

70. Plaintiff does not seek punitive damages against the City on her § 1983 claim.

## COUNT VII

### Assault and Battery (State Law)

(Against Defendants Officer Cox, Officer Tywon Martin, and Sgt. Ebony Dailey, in their individual capacities)

71. Plaintiff realleges paragraphs 1–34.

72. While Plaintiff was handcuffed and in MPD custody, Officer Cox intentionally subjected her to harmful and/or offensive touching without consent or legal justification, constituting battery under Alabama law. Officer Cox acted willfully, maliciously, and without legal justification.

73. Officer Martin and Sgt. Dailey  are liable for assault by engaging in conduct that placed Plaintiff in reasonable apprehension of further harmful or offensive contact, and are further liable for battery under principles of concerted action and/or aiding and abetting, in that they jointly participated in, encouraged, and/or provided substantial assistance to Officer Cox's wrongful acts during the custodial episodes. Officers Martin and Dailey's concert of action, substantial assistance, and failure to intervene render them jointly and severally liable.

74. As a proximate result, Plaintiff suffered physical pain, emotional distress, mental anguish, and other damages.

75. The foregoing conduct was willful, malicious, and/or in reckless disregard of Plaintiff's rights, warranting an award of punitive damages against the individual defendants. Such conduct was willful, malicious, in bad faith, and beyond any discretionary authority; accordingly, Defendants are not entitled to state-agent immunity under Alabama law.

## COUNT VIII

### False Imprisonment (State Law)

(Against Officer Cox and Officer Martin, in their individual capacities)

76. Plaintiff realleges paragraphs 1–34.

77. Defendants Officer Cox and Officer Martin intentionally confined Plaintiff by handcuffing her, placing her in the rear compartment of an MPD patrol vehicle, transporting her to a darker lot, and returning her to Walmart—acts taken without lawful justification and beyond the scope and purpose of any lawful detention.

78. Plaintiff was aware of the confinement, did not consent to it, and had no reasonable means of escape; the detention continued after any lawful purpose had ended.

79. Officer Martin (Driver) acted in concert; he aided, abetted, and/or substantially assisted Officer Cox by maintaining custody and facilitating transport and relocation while knowing of the unlawful confinement.

80. As a proximate result, Plaintiff suffered damages including emotional distress and other losses; Defendants' conduct was willful, malicious, and/or in reckless disregard of Plaintiff's rights, warranting punitive damages against the individual defendants. Such

conduct was willful, malicious, in bad faith, and beyond any discretionary authority; accordingly, Defendants are not entitled to state-agent immunity under Alabama law.

## COUNT IX

### Invasion of Privacy (Intrusion Upon Seclusion) and Outrage (Intentional Infliction of Emotional Distress) (State Law)

(Against Officer Cox, Officer Martin, and Sgt. Dailey, in their individual capacities)

81. Plaintiff realleges paragraphs 1–34.

82. Defendants intentionally and wrongfully intruded upon Plaintiff's solitude and private bodily integrity by, inter alia, coercing sexual touching while she was handcuffed in the rear of a patrol vehicle, relocating her to a dark lot to facilitate sexual demands, and using threats and her phone to intimidate her from reporting—acts undertaken without consent and beyond any lawful purpose.

83. The intrusion was highly offensive and objectionable to a reasonable person and was undertaken for personal gratification and intimidation.

84. Defendants' conduct—including custodial sexual assault, quid-pro-quo "sex-for-release" coercion, relocation while handcuffed, and threats—was extreme and outrageous, intentional or reckless, and beyond all possible bounds of decency. Defendants intended to cause, or recklessly disregarded the substantial probability of causing, severe emotional distress, which Plaintiff in fact suffered.

85. The Officer Martin  and Sgt. Dailey acted intentionally or with reckless disregard by facilitating, aiding and abetting, and/or failing to intervene in the face of obvious ongoing misconduct and Plaintiff's custodial vulnerability.

**86.** As a proximate result, Plaintiff suffered severe emotional distress, mental anguish, and related damages, including medical and counseling expenses; punitive damages are warranted against the individual defendants. Such conduct was willful, malicious, in bad faith, and beyond any discretionary authority; accordingly, Defendants are not entitled to state-agent immunity under Alabama law.

## COUNT X

### Negligence (State Law)

(Against Defendant CITY OF MONTGOMERY)

87. Plaintiff realleges paragraphs 1–34.

88. The City owed duties to exercise reasonable care in the training, supervision, hiring/retention, and enforcement of policies governing opposite-sex custodial transport safeguards (including supervisor notification, route/mileage logging, continuous BWC/ICV activation, and CAD/AVL monitoring), timely interpreter access for limited-English-proficient detainees, and preservation/production of evidence (including BWC/ICV video and metadata, CAD/AVL data, dispatch audio, and related records), as well as command oversight of custodial transports and field investigations.

89. The City breached those duties by negligent training, supervision, hiring/retention, monitoring, enforcement, evidence preservation/handling, and investigative oversight before, during, and after the incidents described herein.

90. These negligent acts and omissions occurred in connection with, and arose out of, the use of MPD patrol vehicle(s)—including detention in the rear compartment while handcuffed,

route/mileage deviations, and failures in CAD/AVL logging and BWC/ICV activation and monitoring—and were a proximate cause of Plaintiff's injuries.

91. Under Ala. Code § 11-47-190, the City is liable for the negligent, careless, and unskillful acts and omissions of its agents acting in the line and scope of municipal employment, which proximately caused Plaintiff's injuries. All negligent acts or omissions occurred within the line and scope of municipal employment.

92. Plaintiff seeks compensatory damages; no punitive damages are sought against the City on state-law claims.

## COUNT XI

### Negligent Hiring, Retention, Training, and Supervision (State Law)

#### (Against Defendant CITY OF MONTGOMERY)

93. Plaintiff realleges paragraphs 1–34.

94. The City owed a duty to exercise reasonable care in hiring, retaining, training, assigning, and supervising MPD officers—particularly with respect to opposite-sex custodial transports; continuous BWC/ICV activation and auditing; CAD/AVL route and mileage logging; timely interpreter access for limited-English-proficient detainees; and command oversight and intervention duties during field detentions and transports.

95. Before, during, and after the incidents alleged, the City had actual or constructive notice of risks created by officers' policy violations and recurring deficiencies in these areas and failed to take reasonable corrective measures, including adequate screening, probationary monitoring, remedial training, discipline, and supervisory enforcement.

96. The City's negligent hiring, retention, training, and supervision occurred within the course and scope of municipal operations, arose in connection with the use of MPD patrol vehicle(s) during custody and transport, and proximately caused Plaintiff's injuries.

97. Liability is asserted pursuant to Ala. Code § 11-47-190 for negligent, careless, and unskillful acts and omissions of municipal agents acting in the line and scope of employment. Plaintiff seeks compensatory damages only on this claim.

## XII. DAMAGES AND OCCURRENCES

98. Plaintiff's injuries and losses arose from multiple, discrete occurrences—Episode 1 (initial Walmart detention and sexual touching), Episode 2 (relocation to a darker lot, renewed sexual touching, and quid-pro-quo coercion), Episode 3 (return to Walmart with threats and phone-based intimidation), and post-incident intimidation by texts/calls—each constituting a separate occurrence and inflicting distinct harms, including physical pain, emotional distress and PTSD symptoms, loss of enjoyment of life, medical and therapy expenses, travel and work disruption, and other special damages. Plaintiff seeks compensatory damages for each such occurrence; punitive damages against the individual defendants; pre- and post-judgment interest as allowed by law; and attorney's fees under 42 U.S.C. § 1988. Plaintiff does not seek punitive damages against the City on state-law claims. Nothing in this pleading concedes aggregation of these occurrences for damages-valuation or insurance-coverage purposes.

## XIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, jointly and severally where permitted by law, and award the following relief:

A. Compensatory damages against all Defendants, for each discrete occurrence pleaded (Episodes 1–3 and post-incident intimidation), in an amount to be determined by the jury for physical pain, emotional distress, mental anguish, loss of enjoyment of life, and other non-economic and economic losses, including medical and counseling expenses and related out-of-pocket costs;

B. Punitive damages against the individual Defendants only (Officer Cox, Officer Martin, Sgt. Dailey, and DOE SUPERVISORS 1–4) to punish and deter willful and reckless misconduct; no punitive damages are sought against the City;

C. Declaratory relief that Defendants' conduct violated Plaintiff's rights under the Fourth and Fourteenth Amendments;

D. Injunctive relief against the City of Montgomery requiring: The requested equitable relief is prospective and aimed at ongoing policies and practices of the City of Montgomery that continue to affect Plaintiff's ability to obtain full redress (including preservation, auditing, and disclosure of evidence and records) and to prevent recurrence of the same violations against Plaintiff. Plaintiff continues to suffer ongoing harm from Defendants' policies and practices in the form of evidence access, retention, and auditing deficiencies that impair full redress of her injuries, warranting prospective relief tailored under Rule 65(d).

1. Adoption, implementation, and enforcement of opposite-sex transport safeguards, including supervisor notification, route/mileage logging, continuous BWC/ICV activation, and CAD/AVL monitoring for all custodial transports;

2. Adoption, implementation, and enforcement of language-access policies providing timely access to certified interpreters for limited-English-proficient detainees in the field and during transport;

3. Periodic audits of BWC/ICV compliance, CAD/AVL integrity, and evidence-retention practices;

4. Procedures mandating conflict-free referral of alleged officer-on-detainee crimes for independent criminal review; and

5. Training, supervision, and discipline protocols sufficient to ensure effective implementation and enforcement of the foregoing;

6. Reasonable compliance reporting to the Court (or as otherwise directed) for a defined period to verify implementation; and

7. The Court's retention of jurisdiction to enforce the injunctive relief;

E. An order directing the City to preserve and produce, consistent with discovery, all BWC/ICV footage and metadata, CAD/AVL data, dispatch audio, MDT messages, records, emails, texts, and related ESI concerning the incidents and ensuing investigations;

F. Pre-judgment and post-judgment interest as allowed by law;

G. Plaintiff's reasonable attorney's fees and costs under 42 U.S.C. § 1988 and other applicable law; and

H. Plaintiff's **taxable costs** under Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920;

I.   An order, pursuant to Fed. R. Evid. 201, taking judicial notice of the public docket entries and docket-stamped copies of Exhibit D and Exhibit E—solely as to their existence, captions, case numbers, and filing dates, and not for the truth of any allegations.

J.   Such other and further legal and equitable relief as the Court deems just and proper.

## XIV. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## XV. RESERVATION OF RIGHTS AND AMENDMENT

Plaintiff will amend this Complaint pursuant to Fed. R. Civ. P. 15 to substitute the true names of the Doe Defendants and to conform the pleadings to the evidence as discovery proceeds. Amendments substituting true names for DOE defendants relate back under Fed. R. Civ. P. 15(c)(1)(A), and Ala. R. Civ. P. 15(c)(4) and 9(h).

Further Identification and Service Timing (Fed. R. Civ. P. 4(m)). Plaintiff will move the Court for an order authorizing narrowly tailored, identity-only discovery from the City—limited to the names, badge numbers, and service addresses of Officer Martin, Sgt. Dailey, and the on-duty supervisor(s)—and for a corresponding extension under Rule 4(m) to effect service within ninety (90) days of the City's compliance with that identity-only order.

**DATED: October 20, 2025**

Respectfully submitted,

CHAVEZ & FORBES, LLP
Attorneys at Law
301 Beacon Parkway W., Suite 150

Birmingham, AL 35209
Office: (205) 538-7359
Fax: (888) 908-0774

/s/ John Adam Chavez
John Adam Chavez, Esq. (CHA116)
ac@chavezforbes.com

/s/ Derrick W. Forbes
Derrick W. Forbes, Esq. (FOR085)
df@chavezforbes.com

Counsel for Plaintiff

---

## EXHIBIT INDEX

**Exhibit A — Sworn Notice of Claim to City of Montgomery (Jan. 15, 2024) and Certified-Mail Proofs**

Plaintiff's sworn, notarized Notice of Claim served upon the City of Montgomery pursuant to Ala. Code § 11-47-23 and accompanying identity-demand under § 11-47-191(c). Includes certified-mail receipts (Tracking Nos. 7022 2410 0002 8667 2081 and 2098) evidencing delivery to the City Clerk and Mayor.

*Referenced in Complaint:* ¶¶ 6(a), 35(a)–(b).

---

**Exhibit B — Evidence-Preservation Letters and Certified-Mail Receipts (MPD Chief 2/1/24; District Attorney 2/6/24; Sheriff 2/14/24)**

Three written preservation demands issued pursuant to Fed. R. Civ. P. 37(e), directing retention of body-worn/in-car video, CAD/AVL data, dispatch audio, MDT messages, internal-affairs materials, and related ESI. Addressed respectively to (1) MPD Chief Darryl J. Albert, (2) District Attorney Daryl Bailey, and (3) Sheriff Derrick Cunningham, with corresponding certified-mail

proofs attached.

*Referenced in Complaint:* ¶¶ 23, 27 (and contextually ¶¶ 24–26, 29).

---

### Exhibit C — City Attorney Denial and Acknowledgment of Claim (Feb. 14, 2024 — Claim No. 2024-0002)

Letter from City Attorney Stacy L. Bellinger acknowledging receipt of Plaintiff's Notice of Claim, confirming arrest and termination of former Officer Markelle Cox, and denying municipal liability while asserting the City was "unaware of any other liable parties." Supports Plaintiff's safe-harbor and ratification allegations under Ala. Code § 11-47-191(c).

*Referenced in Complaint:* ¶¶ 35(b), 67(a).

---

### Exhibit D — State Indictment (Montgomery County, Ala.)

*(Grand Jury No. 04/15/2024-199)* charging **Sexual Abuse in the First Degree** under Ala. Code § 13A-6-66 for the Oct. 20–21, 2023 custodial events involving Plaintiff. Filed Apr. 15, 2024 in *State of Alabama v. Markelle Jaquann Cox*, Case No. CC-2024-000373.00 (Montgomery Cty. Cir. Ct.).

*Referenced in Complaint:* ¶¶ 3, 25, 27–28, 67(a).

---

### Exhibit E — Federal Indictment, *United States v. Cox*, No. 2:25-cr-00099-RAH-SMD (M.D. Ala.)

Filed Feb. 12, 2025, charging *18 U.S.C. § 242* (Counts 1–3) and *18 U.S.C. § 1512(b)(3)* (Counts 4–6) for color-of-law sexual abuse and obstruction relating to the Oct. 20–21, 2023 custodial incidents.

*Referenced in Complaint:* ¶¶ 3, 26, 27–28, 61, 67(a).